[No. 5312.]
[No. 2950 C. A.]

THE WESTERN GLASS MANUFACTURING COMPANY
v. SCHOENINGER.

1. Damages — Personal Injury — Evidence — Physical Examination—Discretion of Court.

There is no limitation in the constitution or statutes of Colorado to restrict the power of trial courts, in actions for personal injuries, to order a medical examination of plaintiff's person by experts, but a defendant has no absolute right to demand such an examination; the allowance of a motion therefor being subject to a review, and correction in case of abuse, on appeal.— P. 363.

2. Same—Application When Made—How. Order Carried Out.

In actions for personal injuries whenever it fairly appears that the ends of justice require the disclosure or more certain ascertainment of important facts which can only be disclosed by the physical examination of plaintiff's person, and the examination may be made without injury to plaintiff's life or health, or the infliction of serious pain, such examination should be applied for and made before trial, and should be ordered and had under the direction and control of the trial court.—P. 364.

3. Same—Failure to Submit to Examination—Penalty.

In an action for personal injuries, an order of the court directing plaintiff to submit to a physical examination before

the trial, may be enforced by staying or dismissing the action and not by punishment as for contempt.—P. 365.

4. **Damages—Personal Injuries—Motion for Physical Examination—Refusal Constituting Error.**

In an action for injuries alleged to be permanent, the evidence stated that plaintiff received no physical wound and no inconveniences at the time, but he continued to work for two days after the injury, and after two weeks consulted a physician, who, relying largely upon the statements of plaintiff and his mother, diagnosed the trouble as St. Vitus's dance with partial paralysis, and after a month's treatment apparently cured the trouble so that plaintiff assumed his ordinary occupation; and that about a year thereafter, and just prior to the trial, the same physician made an examination to prepare himself to testify, and stated that plaintiff was subject to recurring strokes of paralysis usually resulting from St. Vitus's dance, and another physician testified that a physical examination was necessary to determine whether plaintiff had completely recovered from the effects of the accident. Held, that an examination by medical experts would have either put plaintiff's claim in this regard beyond question, or have destroyed it altogether, and, therefore the trial court erred in overruling defendant's motion for such examination made before trial.—P. 365.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Samuel L. Carpenter, Judge.*

Action by Max Schoeninger against The Western Glass Manufacturing Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

Messrs. VAILE, DUNHAM & McALLISTER, for appellant.

Mr. DUNCAN McPHAIL, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff below (appellee here), a minor about sixteen years of age, by his next friend and natural

guardian, his mother, sued to recover damages alleged to have been sustained through the negligence of appellant in failing to provide suitable and safe machinery and appliances with which to perform the work appellee was required to do.

The complaint alleged that the injuries received resulted in total and permanent disability. Eight days preceding the date when the cause was set for trial, a demand in writing was made by the attorneys for defendant upon the attorney for plaintiff for an opportunity to have a physical examination of plaintiff made, before the day of trial, by a competent physician to be selected by the attorneys for defendant, or by the judge of the court before whom the case was to be tried. This demand was refused, upon the ground, as stated, that the accident to plaintiff had happened so long ago that it would not be fair to plaintiff to have a physical examination of plaintiff made at that time. About thirteen months had elapsed between the accident and the date of the demand. On the day of the trial, before the taking of testimony began, defendant moved the court for an order requiring plaintiff to submit to a physical examination by some reputable and competent physician, to be appointed by the court. The motion set forth the necessity for such examination, the written demand for same, and was supported by an affidavit. This motion was denied, an exception saved, and the assignment of error based thereon will be the only one considered in the determination of this appeal.

The question thus presented is a very important one, and is submitted to this court for the first time, although the practice of granting such motions prevails in many of the *nisi prius* courts of this state. Courts are instituted by the state to administer, so far as possible, impartial justice to contending parties. The plaintiff, of his own motion, enters

the court, seeking justice for an alleged wrong inflicted, or to prevent a wrong threatened. In such contests it is the duty of the court to bestow upon the litigants full and exact justice. This cannot be done until the court obtains the full and exact truth touching all matters in issue, so far as the same can be obtained by exhausting all methods available to the full attainment of that end. Plaintiff is a voluntary actor, appealing to the sovereign power of the state for justice, impliedly assenting to do justice to the other party, and impliedly agreeing, in advance, to make any disclosure which is necessary to be made in order that justice may be done. Approximate justice, as the best the courts can do in the administration of the law, must often be accepted, but while the law is satisfied with approximate justice where exact justice cannot be obtained, the court should recognize no rules which stop at the first, when the second is within reach. In actions of this character a plaintiff has under his control evidence which will reveal the truth more clearly than any other which could be introduced.

In the dissenting opinion of Mr. Justice Brewer, in *Union Pacific Railway Co. v. Botsford,* 141 U. S. 250, 258, it is said:

"The end of litigation is justice. Knowledge of the truth is essential thereto. It is conceded, and it is a matter of frequent occurrence, that in the trial of suits of this nature the plaintiff may make in the court-room, in the presence of the jury, any not indecent exposure of his person to show the extent of his injuries; and it is conceded, and also a matter of frequent occurrence, that in private he may call his personal friends and his own physician into a room, and there permit them a full examination of his person, in order that they may testify as to what they see and find. In other words, he may thus dis-

close the actual facts to the jury if his interests require; but by this decision, if his interests are against such a disclosure, it cannot be compelled. It seems strange that a plaintiff may, in the presence of a jury, be permitted to roll up his sleeve and disclose on his arm a wound of which he testifies; but when he testifies as to the existence of such a wound, the court, though persuaded that he is perjuring himself, cannot require him to roll up his sleeve and thus make manifest the truth; nor require him, in the like interest of truth, to step into an adjoining room, and lay bare his arm to the inspection of surgeons. It is said that there is a sanctity of the person which may not be outraged. We believe that truth and justice are more sacred than any personal consideration; and if in other cases, in the interests of justice, or from considerations of mercy, the courts may, as they often do, require such personal examination, why should they not exercise the same power in cases like this, to prevent wrong and injustice?"

If the court is powerless, in actions for personal injuries, to require a plaintiff to submit himself to a physical examination to the end that the truth as to their nature, effect and possible duration may be ascertained, when he, by his suit, has made them the subject of judicial investigation, then the law will permit him to disclose just so much and such parts of the facts as, in his judgment, would benefit his case, at the expense of his adversary, and to invoke the court's aid to compensate him for the injury through a partial and one-sided investigation. Under such circumstances, the court would be an instrument for the accomplishment of the grossest injustice, and, therefore, the object for which courts are instituted would be defeated.

On the other hand, if the plaintiff's claim is meritorious; if he has suffered the injuries he com-

plains of, and on account of which he prosecutes his action, he has nothing to fear from the most rigid examination. His case will only be strengthened thereby.

Beginning with the case of *Lloyd v. Hannibal, etc., Ry. Co.,* 53 Mo. 509, decided in 1873, there have been many adjudications upon the power of trial courts to order a physical examination of the plaintiff, in suits for personal injuries, upon the request of defendant. In this first case the power was denied, but it has since been affirmed by the supreme court of Missouri in *Shepard v. Mo. Pac. Ry. Co.,* 85 Mo. 629; *Sidekum v. Wabash, etc., R. R. Co.,* 93 Mo. 400; *Owens v. Kansas City, etc., Ry. Co.,* 95 Mo. 169.

In 1877, in the well-considered case of *Schroeder v. Chicago, etc., Ry. Co.,* 47 Iowa 375, the power was affirmed, and the rule there announced has been followed in the following cases: *Alabama G. S. R. Co. v. Hill,* 90 Ala. 71; *King v. State,* 100 Ala. 85; *Sibley v. Smith,* 46 Ark. 275; *St. L. S. W. R. Co. v. Dobbins,* 60 Ark. 481; *Richmond & D. R. Co. v. Childress,* 82 Ga. 719; *So. Bend v. Turner,* 156 Ind. 418; *Pens. Co. v. Newmeyer,* 129 Ind. 401; *Hall v. Manson,* 99 Iowa 698; *A. T. & S. F. Ry. Co. v. Thul,* 29 Kan. 466; *City of Gilliland,* 63 Kan. 165; *A. T. & S. F. Ry. Co. v. Palmore,* 68 Kan. 545; *Belt Electric L. Co. v. Allen,* 102 Ky. 551; *Graves v. Battle Creek,* 95 Mich. 266; *Hatfield v. St. Paul & D. R. Co.,* 33 Minn. 130; *Wanck v. Winona,* 78 Minn. 98; *Shepard v. Mo. Pac. Ry. Co.,* 85 Mo. 629; *Sidekum v. Wabash, etc., R. R. Co.,* 93 Mo. 400; *Owens v. K. C. St. J. & C. B. R. Co.,* 95 Mo. 169; *Stuart v. Havens,* 17 Neb. 211; *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578; *Brown v. C. M. & St. P. R. Co.,* 12 N. Dak. 61; *Miami & M. T. Co. v. Bailey,* 37 Ohio St. 104; *Hess v. Lake Shore & M. S. R. Co.,* 7 Pa. Co. Ct. 565; *Lane v. Railway*

*Co.,* 21 Wash. 119; *White v. Milwaukee City R. Co.,* 61 Wis. 536; *O'Brien v. La Crosse,* 99 Wis. 421.

Opposed to the doctrine announced in the above cases, the only cases which have come to our knowledge are *U. P. Ry. Co. v. Botsford,* 141 U. S. 250; *Parker v. Anslow,* 102 Ill. 272, and several early New York cases, which have since been met by statutory enactments in that state granting the power.

The majority opinion of the supreme court of the United States is greatly weakened by the dissenting opinion of Mr. Justice Brewer, concurred in by Mr. Justice Brown, and while we have very great respect for the opinions of that court, the opinion in this case cannot be considered an authority here.

Bearing in mind the fact that the federal courts, other than the supreme court, possess no jurisdiction except what is given them by congress, and that no federal statute gives to those courts power to order a discovery, the argument of the majority opinion, to the effect that the statute of the United States prescribes the mode of proof in the trial of actions at law, and that it shall be oral testimony and examination of witnesses in open court, except as in the statute provided—the only exception being the one for taking depositions and for compulsory production of books or writings in the possession of a party, and, therefore, that the statute inhibits any form of examination or discovery, and removes from the courts the power to require it—we find that the supreme court was passing upon limitations by statute that have no binding force upon the state courts.

There is no limitation either in the constitution or statutes of this state, upon the power of the district court to order such an examination as was demanded by the motion filed in this case. And for these reasons we say that the opinion in this case

cannot be considered as a controlling authority here.

This case is the only authority cited and relied on by counsel for appellee in support of his position that the court has no power to make the order requested, counsel planting himself squarely upon the proposition that such power is not vested in the court.

In *Parker v. Anslow,* 102 Ill. 272, the question here presented is disposed of, without discussion or the citation of a single authority, in a single line, as follows: "The court had no power to make or enforce such an order."

The authorities above cited in support of the power concur in the establishment of the following propositions:

(1) That trial courts have the power to order a medical examination by experts, of the person of a plaintiff seeking a recovery for personal injuries.

(2) That a defendant has no absolute right to demand the enforcement of such an order, but that the motion therefor is addressed to the sound discretion of the trial court.

(3) That the exercise of such discretion is reviewable by the appellate court, and corrected in case of abuse.

(4) That the examination should be applied for and made before entering upon the trial, and should be ordered and had under the direction and control of the court, whenever it fairly appears that the ends of justice require the disclosure or more certain ascertainment of important facts, which can only be disclosed, ascertained and fully elucidated by such an examination, and when the examination may be made without injury to plaintiff's life or health or the infliction of serious pain.

(5) That the refusal of the motion where the circumstances appearing in the record present a reasonably clear case for the examination, under the rule stated, is such an abuse of the discretion lodged in the trial court as will result in a reversal of the judgment in plaintiff's favor.

(6) That such order may be enforced, not by punishment as for a contempt, but by staying or dismissing the action.

In the case before us plaintiff sued to recover for injuries alleged to be permanent, caused by an accident which was so slight that it caused no visible wound or abrasion of the skin, and no outcry at the time from the plaintiff, nor did it in the slightest manner inconvenience him at the time; plaintiff, on the contrary, continuing his work without interruption, and for two days succeeding the date of the accident; that two or more weeks after the accident he consulted a physician, who, relying largely upon statements made him by plaintiff and his mother, diagnosed the case as acute chorea, or Saint Vitus's dance, with partial paralysis, and treated him for that trouble; that the case yielded readily to the treatment, and within a month or two the patient was sufficiently recovered to dispense with further treatment and resumed his occupation as a common laborer; that for a year preceding the trial the physician had not seen the patient until within a week of the trial, when he made an examination of the patient for the purpose of preparing himself to testify at the trial. Plaintiff and his mother testified that plaintiff was suffering from the results of the accident at the time of the trial, to such an extent that he was practically incapacitated from performing any labor; that he had lost several positions on account of his inability to perform his work.

The plaintiff introduced other testimony which

tended to substantiate the testimony of himself and his mother as to his physical condition. The physician who attended plaintiff testified, in his behalf, as to his condition a few days before the trial, and expressed the opinion that the plaintiff was cured, subject, however, to recurrent attacks of paralysis which usually attends Saint Vitus's dance. A physician called by defendant testified that from his observation of plaintiff in the court room during the trial, he would pronounce him entirely cured. In replying to a question relating to plaintiff's physical condition, this physician said:

"I can only answer that question partially. To make good that answer I would have to have the privilege of examining the case."

This witness also testified that a physical examination would determine whether a complete recovery had been made from acute chorea and partial paralysis. The court instructed the jury that in determining the amount of their verdict they should take into consideration the likelihood of plaintiff's suffering pain and sickness in the future, and also of any permanent injuries.

The amount of the verdict, twenty-five hundred dollars, clearly indicates that the jury must have been impressed with the idea that plaintiff's injuries must have been of a severe and permanent character.

It is clear that an examination by medical experts under the direction of the court, as contemplated by the motion, would have either put plaintiff's claim in this regard beyond question, or have destroyed it altogether.

"In either case, there would have been an unquestioned assurance that justice had been done, an assurance which finds no secure anchorage in the present record."—*Atlantic, etc., Ry. Co. v. Hill,* 90 Ala. 71.

Upon reason and principle, sustained by the overwhelming weight of authority, we conclude that in actions of this character, trial courts have the power to order a physical examination of the plaintiff, under the rules above stated, and that the court erred in overruling the motion for such examination, for which reason the judgment will be reversed.

*Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concurring.